## RICHARD et al. v. ROYAL BANK OF CANADA.

Circuit Court of Appeals, Second Circuit. January 9, 1928.

No. 121.

1. Banks and banking ⬅191—That other documents were presented, instead of drafts, did not relieve defendant, agreeing to indemnify bank issuing letters of credit.

That documents complying with terms of letters of credit were presented to bank issuing letters of credit instead of drafts, under which documents payments were made, did not relieve defendant company, which agreed to indemnify bank from liability, since letters of credit did not require drawing of drafts, but merely assumed they would be drawn, and receipts furnished served as vouchers as well as drafts would have done.

2. Banks and banking ⬅191—That no weight certificates were presented did not relieve defendant, agreeing to indemnify bank issuing letters of credit, weight being given on invoices.

Where letters of credit provided that weight certificates approved by certain parties should be presented with drafts, fact that weight certificates were not presented to bank issuing letters of credit did not relieve defendant company, which agreed to indemnify bank, where weight was given on invoices presented with documents, and weight was approved by persons designated to prove weight certificates.

3. Banks and banking ⬅191—That bills of lading presented were not indorsed "freight collect" did not relieve defendant, agreeing to indemnify bank issuing letters of credit.

Where letters of credit provided that complete set of on-board bills of lading drawn to

order, blank indorsed, showing "freight collect," should be presented with drafts, fact that bills of lading. presented to bank issuing letters of credit were not indorsed "freight collect," but "subject to demurrage as per statement attached to original bills of lading only," did not relieve defendant company, which agreed to indemnify bank, of liability, where bills all showed that freight was to be paid by consignee.

4. **Banks and banking** ⟨⟩191—That bills of lading presented did not show cost of material, transportation, and handling charges did not relieve defendant, agreeing to indemnify bank issuing letters of credit.

Where letter of credit provided that drafts should be accompanied by complete set of on-board bills of lading drawn to order, blank indorsed, showing cost of material, transportation, handling charges, and commission, and application provided that it should be "payable against on-board bills of lading, * * * receipted invoice signed by * * * showing cost of material, transportation, handling charges, and commission," fact that bills of lading presented did not show cost of material, cost of transportation, and charges for handling and commission did not relieve defendant company, which agreed to indemnify bank, since words "a complete set of" referred to complete set of documents, and not to duplicate or triplicate bills of lading.

5. **Banks and banking** ⟨⟩191—Answer of defendants, agreeing to indemnify bank issuing letters of credit, justified construction of contract rendering statement of freight unnecessary.

In action by bank to recover under contract to reimburse it for advances made in accordance with letters of credit, answer of defendants to allegation regarding due presentation of required documents, only specifying objection that plaintiff did not present to defendants weight certificate, showed defendants' own interpretation of agreement, justifying practical construction of contract rendering statement of amount of freight in documents presented unnecessary.

6. **Banks and banking** ⟨⟩191—That bills of lading presented did not contain details regarding demurrage did not relieve defendant, agreeing to indemnify bank issuing letters of credit.

That bills of lading presented to bank issuing letters of credit had marginal notation, "Subject to demurrage as per statement attached to original bills of lading," did not relieve defendant company, which agreed to indemnify bank issuing letters of credit, on ground that bills of lading were not effective, because not containing details regarding demurrage.

In Error to the District Court of the United States for the Southern District of New York.

Action by the Royal Bank of Canada against Oscar L. Richard and others, individually and as surviving partners of C. B. Richard & Co. to recover under contracts to reimburse it for advances made in accord-

ance with three letters of credit. Judgment for plaintiff, and defendants bring error. Affirmed.

C. B. Richard & Co., hereinafter called the defendants, applied to the Royal Bank of Canada, hereinafter called the plaintiff, for letters of credit for account of Abraham Fogel, in favor, the first of Compania Azucarera Dominicana, the second of Rafael Esteva, and the third of estate of Boca Chica.

The applications for the letters of credit provided that they should be upon the following terms respectively:

(1) "Account of Abraham Fogel. Amount: About $6,000 (six thousand dollars). Covering shipment of about 1,000 (one thousand) gross tons, of 2,240 pounds each, of scrap iron at $6 (six dollars) per ton. Payable against on-board bills of lading, to order, blank indorsed, freight collect, from San Pedro de Macoris to Philadelphia, certificate of weight, plain and consular invoices; weight certificate and invoice to be approved by Abe Fogel or Hyman Ehrlich and Rafael Esteva. No insurance necessary. Valid July 9, 1923.

"We herewith engage ourselves with you and/or the bona fide holders of drafts and documents drawn in accordance with the above-stipulated terms that the same will meet with due honor upon presentation to us, if drawn and negotiated on or before due date. Conditions embodied in this credit must be strictly adhered to; otherwise, payment will not be effected."

(2) "Account of Abraham Fogel. Amount: About $9,250 (nine thousand two hundred fifty dollars). Covering shipment of about 1,000 (one thousand) gross tons, of 2,240 pounds, of scrap iron at $6.25 (six dollars and twenty-five cents) per ton; 500 (five hundred) gross tons, of 2,240 pounds, of scrap iron at $6 (six dollars) per ton. Payable against on-board bills of lading, steamship Callabasas only, no other steamer, unless authorized by us, freight collect, consigned to our order from San Pedro de Macoris to Philadelphia, consular invoice, receipted invoice signed by Esteva and approved by Hyman Ehrlich, showing cost of material, transportation, handling charges, and commission; weight certificate approved by Esteva and Ehrlich. No insurance necessary. Valid July 13th, 1923.

"We herewith engage ourselves with you and/or the bona fide holders of drafts and documents drawn in accordance with the above-stipulated terms that the same will meet with due honor upon presentation to us,

if drawn and negotiated on or before due date. Conditions embodied in this credit must be strictly adhered to; otherwise, payment will not be effected."

(3) "Account of Abraham Fogel. Amount: About $1,875 (one thousand eight hundred seventy-five dollars). Covering shipment of about 300 (three hundred) gross tons, 2,240 pounds each, scrap iron at $6.25 per ton, to include commissions and other charges. Payable against on-board bills of lading, to order, blank indorsed, freight collect, from San Pedro de Macoris to Philadelphia, certificate of weight, plain and consular invoices; weight certificate and invoice to be approved by Abe Fogel or Hyman Ehrlich and Rafael Esteva. No insurance necessary. Credit valid July 19, 1923.

"We herewith engage ourselves with you and/or the bona fide holders of drafts and documents drawn in accordance with the above-stipulated terms that the same will meet with due honor upon presentation to us, if drawn and negotiated on or before due date. Conditions embodied in this credit must be strictly adhered to; otherwise, payment will not be effected."

Letters of credit calling for the shipment of certain goods from San Pedro de Macoris to Philadelphia were issued upon each of the foregoing applications, and an agreement of indemnity was indorsed by C. B. Richard & Co. on each letter of credit, which among other things provided that:

"In consideration of your issuing at $\frac{my}{our}$ request a letter of credit, a true copy of which is on the reverse side hereof, $\frac{I}{we}$ hereby agree to its terms, and agree with you to provide in on demand days previous to the maturity of the bills drawn in virtue thereof, sufficient funds in cash, or in bills on New York satisfactory to you, to meet the payment of the same with one-fourth of 1 per cent. commission and interest as in hereinafter provided. * * *"

The first letter of credit provided that:

"The shipments must be completed and the drafts drawn on or before July 9, 1923. Drafts drawn under this credit are to be accompanied by the following documents, which are to be surrendered to the Royal Bank of Canada, New York, upon acceptance: A complete set of on-board bills of lading drawn to order, blank indorsed, showing freight collect; invoices commercial, in duplicate, approved by Abe Fogel or Hyman Ehrlich and Rafael Esteva; consular invoice; weight certificate, approved by Abe Fogel or Hyman Ehrlich and Rafael Esteva."

This letter of credit was accompanied by an invoice, stating the weight and approved by Ehrlich and Esteva; also an on-board bill of lading drawn to order, providing that the freight should be paid before delivery, together with a consular invoice.

The second letter of credit provided that:

"The shipments must be completed and the drafts drawn on or before July 13, 1923. Drafts drawn under this credit are to be accompanied by the following documents which are to be surrendered to the Royal Bank of Canada, New York, upon acceptance: A complete set of on-board bills of lading drawn to order, blank indorsed, showing cost of material, transportation, handling charges, and commission; weight certificate, approved by Esteva and Ehrlich; consular invoice."

The foregoing letter of credit was accompanied by an invoice, stating the weight and approved like the first one; also an on-board bill of lading, drawn to order and providing for payment of freight before delivery; together with a consular invoice.

The third letter of credit provided that:

"The shipments must be completed and the drafts drawn on or before July 19, 1923. Drafts drawn under this credit are to be accompanied by the following documents, which are to be surrendered to the Royal Bank of Canada, New York, upon acceptance: A complete set of on-board bills of lading drawn to order, blank indorsed, showing freight collect; invoices commercial, in duplicate, approved by Abe Fogel or Hyman Ehrlich and Rafael Esteva; consular invoice; weight certificate, approved by Abe Fogel or Hyman Ehrlich and Rafael Esteva."

The foregoing letter of credit was accompanied by an invoice, stating the weight and approved by the same persons as the former invoice; likewise an on-board bill of lading drawn to order, on which was inscribed "freight collect," together with a consular invoice.

Drafts were not presented to the agency of the Royal Bank of Canada, but various documents purporting to comply with the terms of the letters of credit, and upon them payments were made to the beneficiaries thereunder and their receipts taken. After these various payments were made the Royal Bank of Canada presented to defendants the documents upon which they had made the advances and demanded payment, and upon refusal of payment brought this suit upon the three indemnity agreements above mentioned.

The trial court found the documents sufficient and directed judgment for the plaintiff.

Weschler & Kohn, of New York City (J. Charles Weschler and Walter T. Kohn, both of New York City, of counsel), for plaintiffs in error.

Zabriskie, Sage, Gray & Todd, of New York City (Matthew J. Shevlin and Leonard P. Moore, both of New York City, of counsel), for defendant in error.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge (after stating the facts as above). The defendants question the decision below because: (1) Drafts were not presented to plaintiff; (2) there were no weight certificates; (3) the bills of lading were not indorsed "freight collect," but "subject to demurrage as per statement attached to original bills of lading only."

[1-3] We find no merit in any of these points. The letters of credit did not require the drawing of drafts. They assumed that they would be drawn, but, had they been drawn by a seller of the iron, the defendants, who were financing Fogel in his purchases, could not have sued the drawers thereof. To be sure, the drafts would have served as vouchers, but the receipts furnished were as good. Likewise, as to the weight certificates, the weight is given on the invoices, and approved by the persons designated to approve the weight certificates. No possible purpose could be served by having separate documents, although such appear to be more customary.

In regard to the indorsement on the bills of lading of "freight collect," the bills all show that the freight was to be paid by the consignee, and that was enough.

A still further objection is made in respect to the second letter of credit. The application for that letter of credit (Defendants' Exhibit D), already quoted, provides that it shall be—

"payable against on-board bills of lading, steamship Callabasas only, no other steamer, unless authorized by us, freight collect, consigned to our order from San Pedro de Macoris to Philadelphia, consular invoice, receipted invoice, signed by Esteva and approved by Hyman Ehrlich, showing cost of material, transportation, handling charges, and commission; weight certificate, approved by Esteva and Ehrlich. No insurance necessary."

The second letter of credit (Plaintiff's Exhibit 16) provided that:

23 F.(2d)—28

"The shipments must be completed and the drafts drawn on or before July 13, 1923. Drafts drawn under this credit are to be accompanied by the following documents, which are to be surrendered to the Royal Bank of Canada, New York, upon acceptance: A complete set of on-board bills of lading drawn to order, blank indorsed, showing cost of material, transportation, handling charges, and commission; weight certificate, approved by Esteva and Ehrlich; consular invoice. Insurance to be effected by buyers."

[4] Now it is said that the second letter of credit (Plaintiff's Exhibit 8) required presentation of on-board bills of lading, which should show *cost* of material, *cost* of transportation, and *charges* for handling and commission. It is true that the clause in the letter of credit seems to have been somewhat carelessly drawn, but we cannot suppose that the insertion in bills of lading of all kinds of things which are never put in such documents was contemplated. "A complete set of" evidently did not refer to duplicate or triplicate bills of lading, but to a complete set of documents, and that is what we hold that the sentence really meant. In fact, the application for the letter of credit (Exhibit D), after specifying "on-board bills of lading" and saying that they shall be on the "steamship Callabasas only, no other steamer, unless authorized by us," and that they shall be "freight collect," goes on to say that the letter of credit shall be payable against "consular invoice, receipted invoice, signed by Esteva and approved by Hyman Ehrlich, showing cost of material, transportation, handling charges, and commission; weight certificate, approved by Esteva and Ehrlich."

Documents showing cost of material, handling charges, and an approved weight certificate were presented, and the receipted invoice and accompanying papers were signed by Esteva and approved by Ehrlich.

The cost of transportation did not appear, either on the bill of lading or other documents; but there is no sufficient reason for supposing that the word "cost," in the clause "showing cost of material," qualifies the word "transportation," which stands buttressed by a comma at either end. "Showing * * * transportation" may have meant that the set of documents should indicate the name of the ship, the route, and the terms of the contract of carriage. To be sure, this would leave little importance to the word "transportation," but its relation to the subject-matter is not clear, and we are not disposed to give it a signification which would defeat the plain-

tiff's rights to recover upon the second cause of action, where it is evident that no one, at least till after the time the answer was filed, dreamed that the documents should contain a statement of the amount of freight, or that they were defective, except in the absence of separate weight certificates.

[5] It is to be noticed that clause eleventh of the answer, which answers the allegation of the complaint alleging due presentation of the required documents, only specifies the objection that the plaintiff did not present to the defendants a weight certificate approved by Rafael Esteva and Hyman Ehrlich. It is hardly to be thought, if the parties had regarded a statement of the cost of transportation as necessarily called for by the terms of the bill of lading, that the answer would have particularly addressed itself to such a limited objection as absence of a proper weight certificate. The defendants' own interpretation of their agreement would seem to justify a practical construction of the contract which would render a statement of the amount of freight uncalled for.

[6] Objection is also made to the marginal notation on the bills of lading, "subject to demurrage as per statement attached to original bills of lading"; this on the ground that these bills of lading are not effective, because they do not contain the details regarding the demurrage. We find this objection hardly comprehensible, but in any event regard it as without merit.

The judgment is affirmed.